Michelle RIVERA and Jeff
Rivera, Appellants,

v.

SOUTH GREEN LIMITED PARTNER-
SHIP and Kastle Systems of Texas,
L.L.C., Appellees.

No. 14–05–00128–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 24, 2006.

Rehearing Overruled Oct. 12, 2006.

Matthew Brian Probus, Sugar Land, for appellants.

Bruce C. Gaible, Christopher Douglas Collings, Ruth Ellen Piller, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is a premises-liability case in which an employee was assaulted in the workplace. Appellants, the employee and her husband, challenge the trial court's summary judgment in favor of the building owner and its security company. We conclude the trial court erred in granting summary judgment in favor of the building owner, but that it ruled correctly as to the

security company. Therefore, we affirm the trial court's judgment in favor of the security company, but reverse the trial court's judgment as to the negligence/premises liability claim against the building owner and remand that claim to the trial court further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On Saturday morning, September 15, 2001, Michelle Rivera went to her place of employment at Hope Star Orthopedic Facility, a medical facility located at 12700 North Featherwood Drive in Houston, Texas. She arrived around 8:30 a.m., went to her office, and began transcribing medical notes. Around 2:00 p.m. that afternoon, while working alone, a male unknown to her entered her office, came up behind her, and placed a sharp knife to her throat. The assailant demanded her money and jewelry. After taking the money from her purse, he led Rivera out of the office to the bathroom, and forced her to remove her clothing while he watched. When Rivera had disrobed, the assailant grabbed her clothes off the floor and knocked her unconscious. The assailant then fled, throwing Rivera's undergarments in a garbage can outside her office as he left. Rivera awoke later lying on the bathroom floor, badly beaten, and in a pool of her own blood. Her husband, Jeff Rivera, arrived at the building shortly thereafter, and took her to the hospital for treatment.

As a result of this incident, the Riveras filed this suit against South Green Limited Partnership ("South Green"), O'Connell Realty Advisors, Inc. ("O'Connell Realty"), and Kastle System of Texas, L.L.C. ("Kastle"). The Riveras alleged that, at the time of the assault, South Green owned the property on which the Hope Star Orthopedic Facility was located, O'Connell

Realty maintained and operated the property, and Kastle provided security for the property. The Riveras asserted various claims for fraud, constructive fraud, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"), negligence, gross negligence, breach of contract, and breach of warranty. South Green, O'Connell Realty, and Kastle filed traditional and no-evidence motions for summary judgment on all claims. The trial court granted summary judgment in favor of all defendants on all claims. *See* TEX.R. CIV. P. 166a(c), (i).[1] The Riveras now appeal the trial court's judgment in favor of South Green (the building owner) and Kastle (the security company).

## II. ISSUES PRESENTED

As to South Green and Kastle,[2] the Riveras assert the following issues on appeal:

(1) Did the trial court err in granting South Green's traditional motion for summary judgment on the duty element of the negligence claim?

(2) Did the trial court err in granting South Green's no-evidence motion for summary judgment on the breach-of-duty element of the negligence claim?

(3) Did the trial court err in granting both South Green's and Kastle's no-evidence motions for summary judgment on the DTPA claims?

(4) Did the trial court err in granting Kastle's no-evidence motion for summary judgment on the Riveras'

third-party-beneficiary-breach-of-contract claim?

## III. STANDARD OF REVIEW

We review a traditional motion for summary judgment by determining whether the movant carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). To prevail on a traditional summary-judgment motion, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under this standard, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

In reviewing a no-evidence motion for summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence mo-

---

1. Although Kastle filed a joint traditional/no-evidence motion for summary judgment, it appears from the trial court's order that, as to Kastle's motion, the trial court granted summary judgment only on the no-evidence grounds. Thus, to the extent that the Riveras challenge the trial court's ruling as to Kastle, we use only the standard of review governing no-evidence motions.

2. We note that the Riveras do not appeal any portion of the summary judgment granted in favor of O'Connell Realty. In addition, the Riveras do not appeal the summary judgment granted in favor of any of the defendants on the claims for fraud, constructive fraud, negligent misrepresentation, and breach of warranty.

tion. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 206–08 (Tex.2002). We take as true all evidence favorable to the nonmovant, and we make all reasonable inferences therefrom in the nonmovant's favor. *Dolcefino,* 19 S.W.3d at 916. A no-evidence motion for summary judgment must be granted if the party opposing the motion does not respond with competent summary-judgment evidence that raises a genuine issue of material fact. *Id.* at 917.

## IV. ANALYSIS

**A. Did the trial court err in granting South Green's traditional motion for summary judgment on the duty element of the Riveras' negligence claim?**

In their first issue, the Riveras contend that the trial court erred in granting South Green's traditional motion for summary judgment on the duty element of their negligence claim because they raised a genuine issue of material fact on this element.

■ In a typical negligence case, a plaintiff will prevail only if she can establish that the defendant owed her a duty of care that was breached as a result of the defendant's acts or omissions and that the type of harm that resulted from those acts or omissions was caused by and reasonably foreseeable by the defendant. *See Allen v. Connolly,* 158 S.W.3d 61, 65 (Tex.App.-Houston [14 Dist.]2005, no pet.). The Riveras' arguments at trial, and on appeal, center on foreseeability and the existence of a legal duty, if any.

In their "Second Amended Petition," the Riveras asserted, as to their negligence claim, that South Green owed Michelle Rivera a duty to exercise ordinary care to keep the premises in a reasonably safe condition, and to make safe any defects, or give an adequate warning of any dangers to its invitees. The Riveras specifically pleaded that South Green, by and through its agents, servants, and employees, knew or should have known the following:

(1) Hope Star Orthopedic was located in a high-crime area.

(2) Previous crimes had occurred on and near the premises.

(3) Criminal activities were occurring or likely to occur at or in the general vicinity of the premises owned and operated by South Green.

(4) The condition on the premises created an unreasonable risk of harm to invitees.

(5) Customers and employees possibly could be injured.

In response, South Green filed a motion for summary judgment asserting in a traditional ground that South Green was entitled to summary judgment as a matter of law on the Riveras' negligence claim because South Green did not owe a duty of ordinary care to the Riveras. More specifically, South Green argued that the injuries Michelle Rivera sustained were unforeseeable. South Green also challenged the Riveras' negligence claim by asserting there is no evidence South Green breached any alleged negligence duty. The trial court agreed and granted South Green summary judgment.

■ Whether South Green has a duty to use ordinary care to protect invitees such as Michelle Rivera from the criminal acts of third parties is a question of law for the court to decide. *See Timberwalk Apart., Partners, Inc. v. Cain,* 972 S.W.2d 749, 756 (Tex.1998). Generally, a person has no legal duty to protect another from the criminal acts of a third person. *Id.; Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). However, a landlord who controls the premises does have a duty to use ordinary care to protect invi-

tees from criminal acts of third parties if it knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See Timberwalk*, 972 S.W.2d at 756; *see also Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993) (concluding that lessor who retains control over the security and safety of the premises owes a duty to a tenant's employee to use ordinary care to protect the employee if the lessor knows or has reason to know of an unreasonable and foreseeable risk of harm from the criminal acts of third parties). Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Id.* at 756. The central issue is whether South Green, at the time of the assault on Michelle Rivera, knew or should have known of an unreasonable and foreseeable risk of criminal conduct on the premises. *See Timberwalk*, 972 S.W.2d at 756–57. In making this determination, this court should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct in question, and what publicity was given the occurrences to indicate that the property owner knew or should have known about them. *See id.* at 757.

■■ For a property owner to foresee criminal conduct on property, there must be evidence that other crimes have occurred on the property or in its immediate vicinity. *Id.* Criminal activity occurring farther from the owner's property bears less relevance because crime rates may be expected to vary significantly within a large geographic area. *Id.* Evidence of remote criminal activity, however, may indicate that crime is approaching an owner's property, but such evidence must be especially strong and must show that the risk of criminal conduct on the owner's property is not merely increasing but has reached a level as to make crime likely. *Id.* Thus, for a risk to be foreseeable, there also must be evidence of criminal activity within the specific area at issue, either on the landowner's property or closely nearby. *Id.*

■ Foreseeability also depends on how recently and how often criminal conduct has occurred in the past. *Timberwalk*, 972 S.W.2d at 757–58. The occurrence of a significant number of crimes within a short time period strengthens the claim that the particular crime at issue was foreseeable. *Id.* at 758. Conversely, the complete absence of previous crimes, or the occurrence of a few crimes over an extended time period, tends to negate the foreseeability element. *Id.*

■ The previous crimes must be sufficiently similar to the crime in question as to place the property owner on notice of the specific danger. *Id.* The prior crimes need not be identical. *Id.* For example, a string of assaults and robberies in an apartment complex make the risk of other violent crimes, like murder and rape, foreseeable. *Id.* On the other hand, a spate of domestic violence crimes in the complex does not portend third-party sexual assaults or robberies. *Id.*

■ The publicity surrounding the previous crimes also can help determine whether a landowner knew or should have known of a foreseeable danger. *Id.* at 757. Actual notice of past incidents strengthens the claim that future crime was foreseeable. *Id.* at 757. However, property owners bear no duty to regularly inspect criminal records to determine the risk of crime in the area. *Id.* at 759.

■ To determine whether a duty exists under *Timberwalk*, a court should weigh all of these factors—proximity, recency, frequency, similarity, and publicity.

*Id.* With these factors in mind, we now review the summary-judgment evidence to determine whether South Green conclusively established that it owed Michelle Rivera no legal duty to exercise ordinary care to protect her from assaults such as the one she suffered on September 15, 2001. The summary-judgment evidence in this case does not prove that South Green is entitled to a judgment as a matter of law. The only summary-judgment evidence South Green offered on this issue was the affidavit by its expert witness, Dr. Merlyn Moore, who stated that he reviewed the crime statistics for crime occurring at the building in the two years prior to the assault in question. According to Dr. Moore, there had not been any violent crimes committed *at* the building during that time period. Dr. Moore concluded as follows:

(20) The complete and conspicuous absence of a single act of violent crime **on** the premises of 12700 North Featherwood Drive for almost three years before the time of occurrence of the incident made the basis of this lawsuit empirically substantiates the lack of foreseeability of subject incident in this matter based on *Timberwalk* criteria [sic] established by the Supreme Court of Texas to assess foreseeability of violent crime.[3]

This affidavit does not satisfy *Timberwalk* as it does not offer any opinion or evidence regarding possible crimes committed *near* or *in the vicinity* of the subject premises. South Green did not offer any other summary-judgment evidence regarding crimes near the building. However, in response to South Green's motion for summary judgment, the Riveras offered the affidavit of their expert witness, Dr. Bruce A. Jacobs, who reviewed the crime statistics from the Houston Police Department beat in which the premises in question is located for the period of January 1, 1999 through September 15, 2001. In his affidavit, Dr. Jacobs specifically stated that:

(18) South Green Medical Building is located in beat 12D30 of the Houston Police Department's Clear Lake Division. In the 2 and 3/4 years leading up the incident, HPD data indicates that 25 robberies, 7 sexual assaults, 46 aggravated assaults, 244 burglaries, 238 burglaries from motor vehicles, and 227 motor vehicle thefts occurred in that beat.

(19) Of these 787 offense, 320 (over 40%) occurred within a mile of the subject premises.

(20) Nearly 1 in 5 of the violent index crimes reported in beat 12D30 during the reference period occurred within 2/10 of a mile of the subject premises. This figure includes 4 robberies, 6 aggravated assaults, and 4 sexual assaults.

Although we agree with South Green that generally a police "beat" would be too broad of an area to consider, Dr. Jacobs, as required by *Timberwalk,* also narrowed the police "beat" crimes down to only those crimes that occurred within a "narrow geographical area"—a mile and 2/10 of a mile from the subject premises. *See Timberwalk,* 972 S.W.2d at 759 (considering crimes in a one-mile radius); *Texas Real Estate Holdings, Inc. v. Quach,* 95 S.W.3d 395, 398–99 (Tex.App.-Houston [1 Dist.] 2002, pet. denied) (concluding that police beat 6B30 is not a "narrow geographic area," as it covers nine square miles but stating that crimes within one mile radius of the premises appropriate

---

**3.** Emphasis added.

measure of immediate vicinity); *Dickinson Arms–REO, L.P. v. Campbell*, 4 S.W.3d 333, 338–39 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (considering apartment complex, nearby hotel, two nearby apartment complexes, all located within one square mile radius). Based on his analysis, it was Dr. Jacobs's opinion that the proximity, similarity, frequency, and recency of crime in the area immediately surrounding the premises at issue suggest that the offense was foreseeable.

The summary-judgment evidence in this case demonstrates the trial court erred to the extent it impliedly ruled that, as a matter of law, South Green did not know and should not have known of an unreasonable and foreseeable risk of harm to Michelle Rivera on September 15, 2001. First, as to proximity, Dr. Jacobs offered evidence of violent crimes within a mile and 2/10 of a mile from the building. In weighing the recency and frequency, the evidence presented by Dr. Jacobs's affidavit regarding the crimes and time period is not disputed. All of the crimes reviewed by Dr. Jacobs occurred within two and three-quarters years of the assault in question. Dr. Jacobs's affidavit shows that in the nine months preceding the assault on Michelle Rivera, 320 of the 787 offenses committed in Beat 12D30 were committed within a mile of the building. This amounts to more than nine crimes per month within a one-mile radius of the premises. Furthermore, within 2/10 of a mile of the premises, there were four robberies, six aggravated assaults, and four sexual assaults

As for similarity, nearly 1 in 5 of the violent index crimes reported in Beat 12D30 during the reference period occurred within 2/10 of a mile of the subject premises, including at least four robberies, six aggravated assaults, and four sexual assaults. All of these crimes are crimes committed against a person rather than property and are similar to the assault and robbery of Michelle Rivera. They all involve either violence or the threat of violence.

Finally, there is no evidence that any of these crimes received publicity. South Green was not required to inspect police records to determine whether its building was in a high-crime area. Although the publicity factor weighs against finding a duty, we conclude that the number of similar crimes in the recent past in the immediate vicinity outweighs the publicity factor. Thus, we conclude that South Green failed to establish as a matter of law that, on September 15, 2001, it did not know and should not have known of an unreasonable and foreseeable risk of criminal conduct on the premises. South Green did not conclusively prove that it had no duty to use ordinary care to protect Michelle Rivera from the criminal acts of third parties. Accordingly, we sustain the Riveras' first issue.

**B. Did the trial court err in granting South Green's no-evidence motion for summary judgment on the breach-of-duty element of the Riveras' negligence claim?**

In their second issue, the Riveras contend that the trial court erred in granting South Green's no-evidence summary-judgment ground attacking the breach-of-duty element of their negligence claim. The Riveras contend that they brought forth more than a scintilla of evidence to defeat summary judgment on this element of their claim.

On the issue of whether South Green breached a duty to use ordinary care to protect Michelle from the criminal acts of third parties the Riveras offered Dr. Jacobs's affidavit testimony, in which he

identified the following possible breaches of duty by South Green:

(1) South Green's failure to have a mechanism in place to detect, deter, and interdict criminal trespassers at times when the access doors were unlocked but when levels of business activity inside the premises were sufficiently low to render the deterrent effect of informal social control—the natural surveillance from patients, staff, doctors, and other invitees—unavailable.

(2) Failure to warn tenants of known criminal activity occurring at the building and in the area surrounding the building.

(3) Failure to provide or install "real-time surveillance" or security cameras of the premises' interior hallways and corridors, which Dr. Jacobs stated would have deterred a crime of the type committed against Michelle.

(4) Real-time surveillance might have prohibited the perpetrator from robbing and assaulting Michelle Rivera, because if the assailant was in the building prior to the assault (evidence suggests that another burglary was committed in a tenant suite down the hall from Hope Star immediately prior to the assault on Michelle Rivera), building representatives would have been alerted to his presence.

To defeat a no-evidence motion for summary judgment, the Riveras were required to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the breach-of-duty element, by raising a fact issue as to whether South Green did something an ordinarily prudent actor exercising ordinary care would not have done under those circumstances or failed to do that which an ordi-

narily prudent person would have done in the exercise of ordinary care. *See Gannett Outdoor Co. v. Kubeczka*, 710 S.W.2d 79, 87 (Tex.App.-Houston [14 Dist.] 1986, no writ). We conclude that the Riveras raised a genuine issue of material fact on the breach-of-duty element through Dr. Jacobs's affidavit. Accordingly, we sustain the Riveras' second issue.

**C. Did the trial court err in granting both South Green's and Kastle's no-evidence motions for summary judgment on the DTPA claims?**

 In their third issue, the Riveras contend that the trial court erred in granting both South Green's and Kastle's no-evidence motions for summary judgment attacking each of the essential elements of their DTPA claims. To defeat a no-evidence motion summary judgment, the Riveras were required to bring forth more than a scintilla of probative evidence that raises a genuine issue of material fact on each of these essential elements. *See Dolcefino*, 19 S.W.3d at 916. One of these essential elements is that the Riveras are DTPA consumers. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). Whether a plaintiff is a consumer under the DTPA is a question of law for the court to decide. *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). However, when the underlying facts necessary to determine consumer status are disputed there is a question of fact. *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 440 (Tex.App.-Houston [14th Dist.] 2004, no pet.). A consumer is an individual who seeks or acquires goods or services by purchase or lease. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996). The Riveras argue that even though there is no direct contractual relationship, they are consumers *vis a vis* both South Green and Kastle. However, the Riveras offered

no proof showing that they sought or acquired goods or services by purchase or lease from either Kastle or South Green. Moreover, Michelle Rivera conceded that she never entered into an agreement or contract with Kastle or South Green. Kastle contracted with South Green to provide a security system for South Green's office building. This contract, however, does not apply to the Riveras. Any benefit derived from the purchase or lease of services by South Green from Kastle would be merely gratuitous and incidental. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543–44 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (concluding that hotel guest was not an intended third-party beneficiary of a contract between hotel and security company); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 407 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.) (concluding that "when the goods or services are purchased for the primary purpose of benefiting the business, and any use or benefit of those products extends to the employee only incidentally, the employee does not have standing to sue under the DTPA.").

In this case, because Michelle Rivera was an employee of Hope Star Orthopedic, and, at most, merely an incidental beneficiary to the contract between Kastle and South Green, there is no evidence of consumer status. Because the Riveras failed to bring forth more than a scintilla of evidence in support of an essential element of their DTPA claims, a no-evidence summary judgment was proper. *See* TEX.R. CIV. P. 166a(i). Accordingly, we overrule the Riveras' third issue.

**D. Did the trial court err in granting Kastle's no-evidence motion for summary judgment on the Riveras' third-party-beneficiary breach-of-contract claim?**

In their fourth issue, the Riveras contend that the trial court erred in granting Kastle's no-evidence motion for summary judgment on their third-party-beneficiary breach-of-contract claim. The Riveras contend that they presented more than a scintilla of evidence in support of each element of this claim. They contend Michelle Rivera was a third-party beneficiary of the Kastle–South Green contract for the security card system that Kastle installed at the building.

■ To recover under a third-party beneficiary claim for breach of contract, the Riveras were required to raise a genuine issue of material fact as to whether they are third-party beneficiaries of this contract. A party is presumed to contract only for its own benefit and any intent to benefit a third party must be clearly apparent and will not be presumed. *Greenway Park Townhomes Condominium Ass'n, Inc. v. Brookfield MUD*, 575 S.W.2d 90, 91 (Tex.Civ.App.-Houston [14th Dist.] 1978, no writ). Any doubt concerning intent should be resolved against the third party. *Id.* The requirements for a third party to recover as beneficiary of a contract are: (1) the contracting parties intended to benefit the third party; and (2) the contracting parties entered into the contract directly and primarily for the third party's benefit. *Dorsett Bros. Concrete Supply, Inc. v. Safeco Title Ins. Co.*, 880 S.W.2d 417, 421 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

■ A third-party beneficiary contract cannot be created by implication. *MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). Therefore, a third-party beneficiary will not be recognized unless the intent to make them so is clearly written or evidenced in the contract. *Id.* Thus, "the fact that a person is directly affected by the

parties' conduct, or that he 'may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary.' " *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 134 (Tex.App.-Houston [14 Dist.] 1997, no writ). Consequently, the law presumes parties contract for themselves unless it "clearly appears" that they intended a third party to benefit from the contract. *MCI Telecomm.*, 995 S.W.2d at 651. "If there is any reasonable doubt as to an intent to confer a direct benefit, the third-party beneficiary claim must fail." *MJR Corp.*, 760 S.W.2d at 11.

 To qualify as a third-party beneficiary, the party must show that she is either a donee or creditor beneficiary of the contract, not one who is benefited only incidentally by the performance of the contract. *MCI Telecomm.*, 995 S.W.2d at 651. A donee beneficiary is a party to whom the performance promised, when rendered, will come to her as a pure donation; a creditor beneficiary is one to whom the performance promised will come in satisfaction of a legal duty owed to her by the promisee. *Id.* This legal duty may include indebtedness, contractual obligations, or other legally enforceable commitments owed the third party. *Id.*

To qualify as a creditor beneficiary, the maker of the contract (here, Kastle) must not only have intended to confer a benefit upon the third party (Michelle Rivera), but it also must have intended for the third-party to have the right to enforce the agreement. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 16 (Tex.App.-Dallas 1988, writ denied). Unless both intents were exhibited on her behalf, the third party remains no more than an incidental beneficiary. *Id.*

 For Michelle Rivera to recover as third-party beneficiary of the contract, she had to overcome the legal presumption that Kastle and South Green contracted for themselves alone, and instead, establish that they contracted for her benefit as well. The law requires the intention of the contracting parties to benefit a third party be "clearly and fully spelled out or enforcement by the third party must be denied." *MCI Telecomm.*, 995 S.W.2d at 651. The Kastle—South Green contract is devoid of any third-party beneficiary language, including benefits explicitly conferred on behalf of the tenants or occupants of the South Green building. *See Esquivel*, 992 S.W.2d at 544 (holding that hotel guest was not an intended third-party beneficiary of a contract between the hotel and security company for purposes of bringing a breach-of-contract claim, and a donee-beneficiary is not likely to be an intended beneficiary of a business contract). Because the Riveras failed to bring forth any evidence that Michelle Rivera was more than an incidental beneficiary of the contract between Kastle and South Green, the trial court properly granted summary judgment on this claim. Therefore, we overrule the Riveras' fourth issue.

## V. CONCLUSION

The summary-judgment evidence does not support the trial court's implied ruling that, as a matter of law, South Green did not know and should not have known of an unreasonable and foreseeable risk of criminal conduct on the premises. Therefore, the trial court erred in granting South Green's motion for summary judgment as to the duty element of the Riveras' negligence claim against South Green. In addition, the Riveras raised a genuine issue of material fact as to whether South Green breached this duty. Thus, the trial court erred in granting South Green's motion for summary judgment as to the Riveras' negligence claims.

Because the summary-judgment evidence proves as a matter of law that the

Riveras are not DTPA consumers and that Michelle Rivera is not a third-party beneficiary of the Kastle contract, the trial court properly granted South Green's and Kastle's motions for summary judgment as to the Riveras' DTPA and third-party-beneficiary breach-of-contract claims. Accordingly, we affirm the trial court's judgment as to all of the Riveras' claims against Kastle and as to all of their claims against South Green, except for their premises liability/negligence claim, as to which we reverse the trial court's judgment. We remand that claim to the trial court for further proceedings consistent with this opinion.