**Affirmed and Memorandum Opinion filed April 3, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00363-CV
_____

**SEARS ROEBUCK & CO., Appellant**

**V.**

**ACM ENGINEERING & ENVIRONMENTAL SERVICES, Appellee**

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-12785**

## MEMORANDUM OPINION

After a customer sued appellant Sears Roebuck & Co. ("Sears") for a faulty siding installation that led to mold damage, Sears filed a third-party petition against appellee ACM Engineering and Environmental Services ("ACM") for breach of contract and breach of warranty.   Sears alleged that Sears's insurer, Liberty Mutual ("Liberty"), hired ACM to test Williams's home and that ACM incorrectly certified that the home was free of mold.[1]

---

[1] In its third-party petition, Sears alleged that it had itself hired ACM; but in response to ACM's

After striking some of Sears's summary-judgment evidence, the trial court rendered a no-evidence summary judgment on Sears's claims. We affirm without reaching the merits of the trial court's evidentiary rulings because, even taking the excluded evidence into account, Sears failed to raise a fact issue to support its claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mary Kay Williams hired Sears in 1992 to install vinyl siding on her home. In 2005, when rain began to leak into the house, Sears sent a roofer to determine the cause. The roofer discovered that Sears had incorrectly installed the siding, allowing water to seep in to the walls and cause extensive mold, rotting, mildew, and termite damage. Sears hired Watermark Restoration, Ltd. ("Watermark") to treat the mold and repair the damage. After Watermark had worked on the home for several months, ACM, a testing service, performed post-remediation tests and certified the home as mold-free. When Williams became sick, however, she hired Linda Lauver, an independent consultant, to test the home again. Lauver found that the home was still contaminated with mold.[2] Williams alleged that she met with Sears and Watermark and sent Sears new estimates that she obtained from a number of companies, but Sears did nothing. According to Williams, the home has now deteriorated beyond repair.

In 2009, Williams sued Sears, Watermark, and Watermark's owner individually for breach of contract, fraud, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Sears filed a third-party petition against ACM for breach of contract and breach of warranty. Sears alleged that Sears's insurer, Liberty, hired ACM to inspect Williams's home, design a mold-remediation protocol, and certify that Watermark had followed the protocol. According to Sears, ACM gave its certification despite Watermark's failure to treat the mold correctly. Sears argued that it could sue ACM as a

---

motion for no-evidence summary judgment, Sears stated that Liberty had hired ACM.

[2] Williams did not sue ACM initially, but later joined ACM as a defendant before ultimately nonsuiting it.

third-party beneficiary of the Liberty-ACM contract or as an undisclosed principal of Liberty. Sears requested damages and attorney's fees.

ACM moved for traditional and no-evidence summary judgment on Sears's claims. In its no-evidence motion, ACM argued that Sears had produced no evidence supporting any essential element of either its breach of contract claim or its breach of warranty claim. In response, Sears produced the following eight exhibits:

A. An unsigned document with the heading "Helmsman Service Agreement." The document purports to be a claim-handling agreement between Sears and Helmsman Management Services, LLC ("Helmsman") effective April 1, 2004 to April 1, 2005. By its own terms, the agreement is not effective until signed by a Helmsman officer.

B. A deposition transcript of Richard Swanson, a licensed mold consultant with ACM who tested Williams's home. Swanson testified that Liberty was his client on the Williams home and identified Ben Gifford of Frontier Adjusters as his primary contact on the job. Swanson also stated that he met with Wally Bruneau of Liberty in connection with the Williams testing job.

C. A report for AQ Testing Services, signed by Lauver. In the report, Lauver concludes that ACM's mold-remediation protocol failed to meet the minimum standards required by the Texas Mold Assessment and Remediation Rules and that ACM failed to comply with the criteria in its own protocol when it issued a clearance certificate for Williams's home.

D. A deposition transcript in which Lauver testifies to substantially the same conclusions as in her report.

E. A "Certificate of Mold Damage Remediation" signed by Swanson and dated September 1, 2006. In the certificate, Swanson represented that the mold contamination of Williams's home was treated in accordance with ACM's remediation protocol.

3

F. A "Post-Remediation Air Quality Certification," also dated September 1, 2006, that ACM prepared for Liberty. In this certification, Swanson represented to Liberty that the mold was fully treated and there was no reason to restrict occupancy of Williams's home.

G. An affidavit of David Halffield, Sear's Vice President for Risk Management. In it, Halffield attests that Helmsman is Liberty's adjusting arm; that the Helmsman Service Agreement controlled the relationship and duties of Sears and Liberty at the time of the Williams claim; that the Helmsman Service Agreement was made by "someone with knowledge of the matters recorded" and kept in the regular course of Sears's business; and that the Williams claim was "handled by Helmsman/Liberty/Brun[eau] pursuant to" the Helmsman Service Agreement.

H. A "facsimile transmittal sheet," on Frontier Adjusters letterhead, dated October 12, 2005. The bulk of the message is addressed to Swanson and reads: "Please send your report and bill to: Liberty Mutual Ins. Co. . . . Attn: Wally Bruneau . . . ." In a space following the word "insured" appears the word "Sears," and following the word "claimant" appears Williams's name. The author is unidentified but for the signature "Ben G." Sears presented four identical copies of this sheet as a single exhibit.

ACM objected to all of Sears's evidence except for Exhibit B. The trial court sustained ACM's objections as to exhibits A, C, and G and pages 1–3 of exhibit H[3] and rendered no-evidence summary judgment on both of Sears's claims, without ruling on ACM's traditional summary-judgment motion.

---

[3] As noted above, this exhibit consists of four copies of the same document.

## II. ISSUES PRESENTED

In its first four issues, Sears argues that the trial court erred in excluding its summary-judgment evidence. In its fifth and sixth issues, Sears contends that the trial court erred in granting ACM's motion for no-evidence summary judgment.[4]

## III. ANALYSIS

### A. Standard of Review

A claimed error in admitting or excluding evidence is not reversible unless the complaining party shows that the error probably resulted in an improper judgment. *See* TEX. R. APP. P. 44.1; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). We first address whether, disregarding the trial court's exclusion of its evidence, Sears raised a fact issue on each of its claims. If no-evidence summary judgment was appropriate even taking the excluded evidence into account, then Sears's evidentiary issues are moot.

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Id.* (citing *City of Keller v. Wilson*,

---

[4] Sears also argues that the trial court entered "improper conclusions of law" regarding Sears's third-party-beneficiary and undisclosed-principal theories, but Sears has failed to brief these issues and we will not address them. *See* TEX. R. APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (even though courts interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the parties' argument).

5

168 S.W.3d 802, 827 (Tex. 2005) and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)).  The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).  The evidence is insufficient if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists.  *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

When, as here, the movant asserts multiple grounds for summary judgment and the trial court grants summary judgment without specifying the grounds for its ruling, we must affirm the judgment if any of the grounds are meritorious.  *Carr v. Brasher*, 775 S.W.2d 567, 570 (Tex. 1989); *Chrismon v. Brown*, 246 S.W.3d 102, 106 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## B.    Breach of Contract Claim

Although ACM stated in its no-evidence motion that Sears failed to produce evidence supporting any element of its breach-of-contract claim, the dispute in this case centers on Sears's third-party-beneficiary and undisclosed-principal theories.  As a prerequisite to its breach-of-contract claim, Sears had to produce more than a scintilla of evidence that it had standing to enforce the contract at issue.  *See Rivera v. S. Green Ltd. P'ship*, 208 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (applying no-evidence summary judgment standard to third-party-beneficiary question).[5]  To show

---

[5] While we informally refer to the ability of a party to enforce a contract as a question of "standing," the ability of such a party to sue goes to the merits and does not deprive the court of jurisdiction. *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  Therefore, we do not apply a de novo standard of review as we would to a jurisdictional question of standing.  *See Tex.Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) ("Whether the trial court has subject-matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo.").

this, Sears presented evidence purporting to support two theories: that Sears was a third-party beneficiary of the Liberty-ACM contract and that Sears was Liberty's undisclosed principal.

A third party may recover on a contract made between other parties if it can show that the contracting parties intended the contract for the third party's direct benefit. *Rodriguez v. U.S. Sec. Assocs., Inc.*, 162 S.W.3d 868, 876 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A party is presumed to contract for its own benefit, and any intent to benefit a third party must be clearly apparent and will not be presumed. *Greenway Park Townhomes Condo. Ass'n, Inc. v. Brookfield MUD*, 575 S.W.2d 90, 91 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ). To determine the parties' intent, we must examine the entire agreement to harmonize and give effect to all of the contract's provisions so that none are rendered meaningless. *Id.* The intention to contract for or confer a direct benefit to a third party must be clearly and fully spelled out. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650, 651 (Tex. 1999). If there is any reasonable doubt as the intent to confer a direct benefit, the third-party beneficiary claim must fail. *Rivera*, 208 S.W.3d at 23 (citing *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 11 (Tex. App.—Dallas 1988, writ denied)).

To qualify as an intended third-party beneficiary, a party must show that it is either a "donee" or "creditor" beneficiary of the contract. *Stine v. Stewart*. 80 S.W.3d 586, 589 (Tex. 2002) (per curiam) (citing *MCI*, 995 S.W.2d at 651). An agreement benefits a "donee" beneficiary if, under the contract, the performance promised, when rendered, will come to the third party as a pure donation. *Id.* (citing *MCI*, 995 S.W.2d at 651). An agreement benefits a "creditor" beneficiary if, under the agreement, that performance will come to the third party in satisfaction of a legal duty owed to it. *Id.* (quoting *MCI*, 995 S.W.2d at 651). This duty may be indebtedness, a contractual obligation, or any other legally enforceable commitment owed to the third party. *Id.* To qualify as a creditor beneficiary, the claimant must show that the parties to the contract intended not only to

7

confer a benefit upon the third party but also for the third party to have the right to enforce the agreement. *Rivera*, 208 S.W.3d at 23 (citing *MJR Corp.*, 760 S.W.2d at 16). Unless both intents were exhibited on the third party's behalf, the third party remains no more than an incidental beneficiary. *Id.*

In its summary-judgment response, Sears cited only the Helmsman Service Agreement and Halffield's affidavit as evidence that Sears was a third-party beneficiary of Liberty's contract with ACM. According to Sears, these show that Liberty was obligated to handle claims against Sears during the period in which Liberty contracted with ACM, and therefore that the parties must have intended for ACM to render performance for Sears's benefit in fulfillment of that obligation. At best, however, this evidence gives rise to an inference about Liberty's and ACM's intent at the time of their agreement. Absent affirmative evidence from the Liberty-ACM agreement itself, we will not infer that Sears was an intended third-party beneficiary based on circumstances alone. *See Nitzsche v. TEAMS of Tex.*, No. 14-05-00876-CV, 2007 WL 925803, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2007, no pet.) (mem. op.) ("We will not create third party beneficiary status on our own or by implication; instead, the intent to create that status must by clearly and fully spelled out in the contract."). The only evidence of the Liberty/ACM agreement is the deposition testimony of Swanson and the facsimile invoice. This is no evidence of Sears's third-party-beneficiary status.

In the alternative, Sears argued that it could sue ACM as an undisclosed principal. An agent may make a contract for an undisclosed principal in his own name, and the principal may sue or be sued on the contract. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) (citing *First Nat'l Bank of Wichita Falls v. Fite*, 131 Tex. 523, 531, 115 S.W.2d 1105, 1109–10 (1938)). In response to ACM's no-evidence motion, Sears pointed only to the Helmsman Service Agreement and Halffield's affidavit as evidence that Liberty acted as Sears's agent in hiring ACM. But, even assuming these show that Liberty was Sears's insurer, an insurer is not an agent of the insured merely because it

performs acts beneficial to the insured. *Mandola v. Mariotti*, 557 S.W.2d 350, 352 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Further, both Sears's third-party-beneficiary argument and its undisclosed-principal argument would undermine the rule that a contractor hired by an insurance company owes no duty to the insured. *See Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 791–92 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Nitzsche*, 2007 WL 925803, at *2. Sears attempts to distinguish *Dagley* and *Nitzsche* on the ground that in those cases, the insurer hired a contractor to investigate whether the insurer was liable for a claim, whereas Liberty purportedly acknowledged that it was liable for Sears's claim by hiring ACM to test Williams's home. This distinction is incorrect for at least two reasons. First, Sears assumes that Liberty's role with respect to Sears affects whether ACM owed Sears a legal duty, but has presented no valid theory for why it should. Sears's agency argument might have provided such a theory, but Sears failed to support it with evidence; Sears's third-party-beneficiary argument, meanwhile, is not a valid theory for why Liberty's role should matter: as we have explained, whether Sears was a third-party beneficiary of the Liberty–ACM contract depends not on Liberty's role but on Liberty's and ACM's intent at the time they contracted.

Second, Sears's distinction fails on its own terms. Sears ignores cases in which our court held that a contractor owed the insured no duty even where the insurer appeared to hire the contractor "on behalf of" the insured. In *Justice v. State Farm Lloyds Insurance Co.*, 246 S.W.3d 762 (Tex. App.—Houston [14th Dist.] 2009, no pet.), for example, an insurer hired an independent contractor to conduct an industrial hygiene evaluation after the policyholders discovered mold. *Id.* at 764. The insurer also paid the policyholders over $137,000 for remediation, alternative living expenses, and cleaning costs. *Id.* When the policyholders discovered more mold, they sued the contractor for negligence. *Id.* at 765. The insurer in *Justice* clearly met Sears's definition of acting "on behalf of" the insured: it hired the contractor to test the policyholders' home for mold and paid the

9

policyholders over $137,000 for costs.[6]  *Id.* at 764.  Nonetheless, we affirmed a no-evidence summary judgment against the policyholders based in part on the rule that a contractor hired by an insurer owes no duty to the insured.  *Id.* at 765.  Under Sears's distinction, the policyholders could have sued the contractor on its contract with the insurer and enjoyed greater success than they did on their negligence claim.  This illustrates how Sears's proposed use of the third party beneficiary and agency doctrines would effectively create a duty on such contractors in cases where we have recognized none.

Because Sears failed to present any evidence in support of its third-party-beneficiary and undisclosed-principal theories, we overrule Sears's fifth and sixth issues as they pertain to its breach of contract claim.

## C.  Breach of Express Warranty Claim

Finally, Sears argues that it presented more than a scintilla of evidence in support of its claim for breach of express warranty for services.  According to Sears, ACM's mold-remediation certification represented an express warranty that Williams's home was free of mold.  To establish a claim for breach of an express warranty for services, a plaintiff must prove at least the following: the defendant sold services to the plaintiff; the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, promise, or description; the representation became part of the basis of the bargain; the defendant breached the warranty; and the plaintiff suffered injury.  *Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 527 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  In this case, Sears acknowledges that ACM did not sell its services to Sears.  *See Hennen v. McGinty*, 335 S.W.3d 642, 652 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) ("Appellant's breach of express warranty cause of action

---

[6] Although we ultimately held that the insurer was not liable for the mold damage, Sears's argument—that ACM should owe it a duty because of Liberty's role with respect to Sears—pertains to whether the insurer acted "on the insured's behalf" at the time it hired the contractor.  At the time the insurer in *Justice* hired the contractor, it appeared, far more than Liberty, to be acting on the insured's behalf.

founders on the first element because there is no evidence in the record that McGinty, individually, sold any services to appellant.").  As noted above, Sears also presented no evidence that it was a third party beneficiary of the Liberty-ACM contract or that Liberty acted as its agent.

Because Sears failed to present evidence in support of at least one essential element of its claim for breach of express warranty for services, we overrule Sears's fifth and sixth issues as they pertain to that claim.

## IV.  CONCLUSION

Having held that Sears failed to produce more than a scintilla of evidence in support of either of its claims, we affirm the no-evidence summary judgment on both.  Because the trial court's exclusion of Sears's evidence is not a potential basis for reversal, we do not address Sears's remaining arguments.

The judgment is affirmed.


/s/     Tracy Christopher
Justice


Panel consists of Justices Brown, Frost, and Christopher.