**Affirmed and Majority and Dissenting Opinions filed November 27, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00103-CV

---

### SAFECO INSURANCE COMPANY OF AMERICA, Appellant

### V.

### CLEAR VISION WINDSHIELD REPAIR, LLC, ELIZABETH DUTSON, BRUCE HOUCK, GREG HINEMAN, MATTHEW ONEILL, AND JAMES MCCUBBIN, Appellees

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2015-03748**

---

## D I S S E N T I N G   O P I N I O N

For parties seeking to avoid enforcement of a contract term, waiver by conduct stands as a high hurdle. To clear it, the conduct must be "unequivocally inconsistent" with the contract right.[1] Today, in holding the insurer waived the insurance policy's anti-assignment clause, this court dilutes the legal standard so

---

[1] *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005).

that the high hurdle becomes a low bar.  Even under the majority's thinning of the Supreme Court of Texas's unequivocally-inconsistent standard, the "waiver conduct" on which the majority relies fails as a matter of law because it is not at odds with enforcing the anti-assignment right. In tacit recognition of this fact, the majority fails to even address the insurer's argument that under the alternatively-pled implied-contract scenario, neither the policyholders' purported assignments nor the insurer's anti-assignment rights would come into play and so could not possibly conflict.  The record evidence is legally and factually insufficient to prove that the insurer waived its right to enforce the anti-assignment clause. Rather than affirm the trial court's judgment, this court should reject the waiver-by-conduct theory and address the remaining issues. Because it does not, I respectfully dissent.

## The Contractual Relationships in Issue

Appellant Safeco Insurance Company of America has no express contract with appellee Clear Vision Windshield Repair, LLC. The individual appellees/policyholders Matthew O'Neill, Elizabeth Dutson, Bruce Houck, and James McCubbin (the "Four Individuals") each purchased insurance policies that contain anti-assignment clauses, binding themselves to this term of their respective insuring agreements with Safeco. Despite this contractual prohibition in their respective policies, each of the Four Individuals purported to assign certain policy benefits to Clear Vision without getting Safeco's written consent, as their respective contracts required. When Clear Vision filed suit, Safeco asserted its rights under the policies' anti-assignment clauses.

In its lawsuit, Clear Vision asserted two theories of recovery against Safeco: (1) breach of an implied contract with Safeco and (2) as the purported assignee of the Four Individuals. Notably, the majority does not consider whether Safeco and Clear Vision formed an implied contract or, if so, whether Safeco breached it.

2

Instead, the majority addresses only the assignment theory of recovery and finds that Safeco waived enforcement of the anti-assignment provisions by its conduct. In reaching this holding, the majority conflates the two theories, using conduct that could be relevant to a Safeco-Clear Vision implied-contract analysis as evidence of waiver in the respective contractual relationships between Safeco and the Four Individuals. This approach skews the waiver analysis.

Because today's decision turns on the strength of the conduct alleged to constitute waiver, it is crucial for the court to assess the conduct through the lens of waiver rather than through the lens of implied contract. In assessing possible waiver by conduct, the court must look to Safeco's actions with respect to each individual policyholder. The majority, finding very little there, turns to Safeco's actions *vis-à-vis* other contractual relationships. While that evidence would be appropriate to an implied-contract analysis, the court should not use it to find waiver by conduct. By relying upon evidence of Safeco's actions in other contractual relationships in its waiver-by-conduct analysis, the majority takes Texas's waiver-by-conduct doctrine to a new place, one that is out of step with the high court's precedent.

**Today's Expansion of the Waiver-by-Conduct Doctrine**

If we do not ask the right questions, we will not get the right answers. In analyzing waiver by conduct, we first must ask, "What is the contract right at issue?" Then, we must ask, "What conduct operates to waive that right?"

The first question is easily answered: The contract rights at issue are Safeco's rights to enforce the anti-assignment clauses as to O'Neill, Dutson, Houck, and McCubbin based on Safeco's respective insuring agreements with these individuals. In laying the groundwork for answering the second question, the majority points to conduct unrelated to these individuals' respective insuring

3

agreements as if Safeco's conduct in other contractual relationships with other people under other policies operates to waive its rights in its contracts with the Four Individuals.[2] Safeco's conduct in other contractual relationships has no bearing on the waiver analysis applicable to the Four Individuals. Yet, largely on the strength of this extra-contractual-relationship evidence the appellees urge the court to hold the evidence legally and factually sufficient to support the trial court's finding that Safeco waived enforcement of the anti-assignment clauses in the Four Individuals' insurance policies.

The waiver conduct must be tied to the contract right. Random waiver conduct does not suffice — the conduct must go to the particular rights at issue, in today's case, the rights to enforce the anti-assignment clause as to each of the Four Individuals. It is not enough that the one entitled to enforce the right has waived the same type of right in other contractual relationships for other, similarly situated people. Two sets of contracting parties might enter into identical contracts but that does not mean that a waiver in one operates as a waiver in both. Because waiver of contractual rights must be rooted in intentional conduct, the law does not infer waiver of a contract right from evidence that the party seeking enforcement waived the same type of right in a similar contract with someone else.[3] Like fingerprints or snowflakes, contracts may look alike but they are distinct agreements.

Under Texas law, we are to analyze waiver by conduct on an individual basis, considering what specific facts show the right-holder's intent to give up the right to enforce a specific provision against a specific party. Waiver as to one is not

---

[2] *See ante* at 3 (noting Clear Vision has submitted thousands of claims to Safeco since 2011; stating Safeco pays submitted invoices about 85% of the time, and that as to unpaid invoices, Safeco did not give the anti-assignment clause as the reason for non-payment.)

[3] *See Certain Underwriters at Lloyd's v. PV Housing Group, L.P.*, No. H-10-3024, 2012 WL 10688348, at *9 (S.D. Tex. Jan. 9, 2012).

4

necessarily waiver as to all. Waiver by conduct turns on the facts and circumstances in each contractual relationship.

For example, in the borrower-lender context, a lender's waiver of a late fee in a form contract as to one or two (or even many) borrowers does not waive the late-fee right as to all borrowers who have the same form loan documents. Likewise, in the landlord-tenant context, a landlord's waiver of a notice provision for one tenant (or even for many tenants) does not waive the provision as to all tenants who have the same form lease. Simply put, individual contracts demand individual waiver analyses.

Though many insurance policies may contain the same or similar provisions, they do not form a unitary contract among policyholders. Each individual that purchases an insurance policy forms a separate, stand-alone agreement with the insurer. Though contracts with standard provisions, such as an anti-assignment clause may be commonplace, the law does not carve out short-cuts for litigants asserting waiver by conduct.

Under Texas law, for a contract party to establish waiver of a contract right, the "waiver conduct" must be tied to the contract right by a showing that the one entitled to enforcement of the right intentionally forfeited the right as to the other party to that contract.[4] The individualized showing of waiver falls short in this case. To bridge the gap, appellees urge the court to look to facts relevant in an implied-contract analysis but not germane to the waiver determination. The majority looks to generic conduct that might amount to waiver of some right as against some party in some context, but does little to tie that conduct to Safeco's contract rights with the Four Individuals.

---

[4] *Van Indep. Sch. Dist.*, 165 S.W.3d at 353.

Though conduct relating to other policyholders would be relevant to the implied-contract analysis Clear Vision urges as an alternative theory of recovery, today's decision does not rest on any contract, implied or express, between Clear Vision and Safeco. (The majority expressly declines to undertake an implied-contract analysis.) The majority instead bases its waiver analysis on Clear Vision's purported role as an assignee of the Four Individuals.

### No Conduct "Unequivocally Inconsistent" with Enforcement of Anti-Assignment Clause in the Four Individuals' Policies

Though sometimes waiver of a contract provision may be established by conduct alone, for the proponent of this defensive theory to clear that high hurdle, the conduct must be "unequivocally inconsistent" with claiming the right — a heavy lift under Texas law.[5] Fuzzy actions fall short of meeting the waiver-by-conduct standard. Yet, the majority relies on conduct, vague at best, to form the core of its waiver finding.

The unequivocally-inconsistent legal standard demands conduct that is so clear, so obvious, and so undeniable that it substitutes for words. No evidence in the record meets that standard. The record contains nothing from which to infer intentional relinquishment of a known right.[6] The nebulous acts and omissions on which the appellees and the majority rely (addressed individually below) do not suffice for waiver.

### *Failure to Raise the Anti-Assignment Clause*

The majority's waiver analysis for the O'Neill policy rests mostly on Safeco's purported failure to raise the anti-assignment clause at the time Clear

---

[5] *Id*.

[6] *See Jernigan v. Langley,* 111 S.W.3d 153, 156–57 (Tex. 2003).

Vision presented its invoice.[7]  First, the O'Neill-Safeco insurance policy did not obligate Safeco to affirmatively raise the anti-assignment clause and Safeco's failure to do so reflects no inconsistency.[8]  Second, the majority fails to take account of all the possibilities.  For example, if the O'Neill transaction were the product of a Clear Vision-Safeco implied contract for Clear Vision to repair Safeco's policyholders' windshields, as Clear Vision alleges and as the trial court found, there would be no reason for Safeco to raise the anti-assignment clause as the services would be performed under a contract, not by assignment. So, either way, Safeco's failure to raise the anti-assignment clause would not be inconsistent with enforcing it, and certainly not "unequivocally inconsistent."

The same holds true for Safeco's alleged failure to raise the anti-assignment clause in connection with Clear Vision's invoices for the Houck, Dutson, and McCubbin transactions.  If there were no Safeco-Clear Vision implied contract, the majority points to nothing in these individuals' insuring agreements that would require Safeco to tell Clear Vision anything or to respond to a purported assignment that lacked the requisite consent. If there were a Safeco-Clear Vision implied contract, as the trial court found, then the anti-assignment clause would not be implicated and a failure to raise it would not be at odds with enforcing it.

### *Failure to Cite to Anti-Assignment Clause as Reason for Non-Payment*

The majority states that "Safeco never gave the anti-assignment clause as the reason for non-payment"[9] and instead rejected Clear Vision's demand for payment

---

[7] *See ante* at 9–12.

[8] *See Van Indep. Sch. Dist.*, 165 S.W.3d at 353; *cf. In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding) (concluding General Electric did not waive its previously asserted contractual right by not complaining sooner, even though the "circumstances here may indicate inattention or a certain lack of care on the part of General Electric," because no evidence of specific intent to waive its contractual right existed).

[9] *See ante* at 11.

of the O'Neill invoice based on the lack of sales tax. But rejecting the proffer based on missing sales tax is wholly consistent with the implied-contract scenario. If Safeco and Clear Vision had an implied contract (as the trial court found), then the anti-assignment clause would not be at issue and giving the sales-tax reason for non-payment would not be inconsistent with enforcing the anti-assignment provision.

Moreover, neither this court nor the Supreme Court of Texas has ever held that a party waives a contractual right by not citing it as a reason for its actions. Nor would that requirement promote Texas's freedom-of-contract principles.

A contracting party may have many reasons for not accepting a proffered assignment. Giving no reason, or giving a reason other than a reason that would implicate the anti-assignment right, is not inconsistent with asserting the right to reject a non-complying assignment. First, the parties did not put that requirement in their contract. Second, the law does not require a contract party to provide an exhaustive recitation of all the other party's failures to preserve contract rights. A party presented with a non-complying assignment and demand for payment might have a dozen reasons the proffer fails. In the majority's world of waiver, telling the erstwhile assignee/presenter "we're closed" or the "signature is illegible" or "our computer is down" would waive every contract right not given in the first exchange. The Supreme Court of Texas does not put that burden on the contract right-holder. Texas law puts the burden on the one seeking to avoid enforcement of the contract right to show waiver by unequivocally inconsistent conduct.[10] Unless the contract provides otherwise, saying "no" to a stranger's demand for payment or

---

[10] *See Van Indep. Sch. Dist.*, 165 S.W.3d at 353.

giving a different reason (e.g., no sales tax) for the "no," or giving no reason at all, is not unequivocally inconsistent with claiming the anti-assignment right.

Under the majority's reasoning a non-signatory to a bank's depositor agreement who demanded to make a withdrawal on the account could recover against the refusing bank on the theory that by doing nothing the bank waived its right to insist on a valid signature before releasing deposited funds. If the bank instead had given as a reason for not funding the withdrawal that the non-signatory did not have the proper form of identification, then, under today's analysis, the bank would have waived its right to insist on a valid signature because it did not give *that* as a reason for not permitting the withdrawal. Just as the bank would not waive its contract right to insist on a valid signature for withdrawals by giving a different reason for rejecting the proffer, Safeco did not waive its right to enforce the anti-assignment clause by not raising the non-complying assignment.

Waiver must be based on more than the unrequited communique of a non-party to the contract. Presuming for argument's sake that when Clear Vision presented the assignment to Safeco, it was asking for Safeco's consent and that Safeco stood silent, this silence is no evidence of waiver.[11] Just as an offeree's silence is no evidence of acceptance of the contract's terms, an insurer's silence in response to a would-be assignee's request for consent is no evidence of acceptance or waiver of the non-complying assignment.[12]

The Supreme Court of Texas has emphasized that waiver is largely a matter of intent.[13] So, for implied waiver to be found through Safeco's conduct, intent must be demonstrated by the surrounding facts and circumstances. The appellees

---

[11] *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[12] *See id*.

[13] *Van Indep. Sch. Dist.,* 165 S.W.3d at 353.

submitted no evidence of any positive act, representations, or affirmative action by Safeco to show Safeco intentionally relinquished its right to confine the Four Individuals to the contract terms and thus demand strict adherence to the written policy.

### *The False Premise of "Unreasonable Delay"*

Without citing any law, the majority considers evidence of Safeco's conduct with other insureds on the ground that the trial court could consider Safeco's practice regarding other policies in deciding whether Safeco "delayed unreasonably" in invoking the anti-assignment clause of O'Neill's policy. In making this leap, the majority fails to consider that no evidence shows that the 2,500 claims were paid based on non-complying assignments. Indeed, according to Stroh, Safeco never once raised the anti-assignment right, so none of the 2,500 cases on which the majority relies would be germane to unreasonable delay in the context of a non-complying assignment. And, as noted above, the 2,500 claims paid could have been based on a Clear Vision-Safeco implied contract. The majority cannot rule out this possibility without addressing the implied-contract theory. Nowhere in its opinion does the majority dispute that if Clear Vision and Safeco had an implied contract, Safeco's failure to raise the anti-assignment provision would not be inconsistent with enforcing it.

The majority cites no law that says a contracting party need respond to a stranger-to-the-contract's presentation of a non-operative assignment or that silence in these circumstances equates to relinquishment of the anti-assignment contract right. It is not a matter of delay; it is a matter of non-compliance. Nothing in the contract requires Safeco to respond to strangers who present putative assignments to which no written consent has been given.

Our supreme court has signaled heightened protection for contract rights

10

when parties spell out their respective entitlements. Today's case presents a situation analogous to waiver of anti-waiver provisions. In that context, the high court held that a landlord did not waive its rights under the anti-waiver provision in a lease because the facts and circumstances did not show that the landlord engaged in conduct unequivocally inconsistent with claiming the landlord's right to rely upon the anti-waiver provision.[14] Similarly, in today's case, the facts and circumstances surrounding each of the four insurance policies do not show that Safeco engaged in conduct unequivocally inconsistent with claiming its right to rely upon the anti-assignment clauses.[15]

Clear Vision and the Four Individuals, as the ones seeking to avoid enforcement of the anti-assignment clauses, have the burden to show waiver. The concept of unreasonable delay as evidence of waiver finds roots in the notion that the delaying party has a contractual obligation to take action. For the majority, the triggering event to measure "unreasonable delay" is presentment of the non-complying assignment — an assignment that on its face does not meet the policy's demand for written consent. The majority does not explain how a non-complying assignment even starts the clock. Given Clear Vision's stranger-to-the-policy status, why does Safeco have any obligation to respond at all? Does Clear Vision even have standing to assert a breach-of-insurance policy claim when Clear Vision never presented a policy-sanctioned assignment?

### *Payment of Invoices*

Testimony that Clear Vision directly billed Safeco for approximately 2,500 windshield repairs since 2011, and that Safeco paid 85% of them is no evidence that Safeco waived the anti-assignment clause as to the Four Individuals. Waiver

---

[14] *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485–86 (Tex. 2017).

[15] *See id*.

11

turns on facts, not odds. Evidence that Safeco paid 85% of the invoices Clear Vision presented might be evidence of an implied contract between the two, but it is no evidence of waiver of the anti-assignment clauses. The evidence does not satisfy the unequivocally-inconsistent element.

Payment of the Dutson, Houck, and McCubbin invoices is not necessarily conduct inconsistent with Safeco's claiming the anti-assignment rights. Other possibilities exist for that action. For example, Safeco might have paid Clear Vision under an implied contract with Clear Vision. The majority does not conduct an implied-contract analysis, nor does the majority undertake to refute this alternative that would be consistent with enforcement of the anti-assignment clauses. Evidence of even one alternative hypothesis makes it impossible for the appellees to meet the unequivocally inconsistent standard.

### *Silence during Transactions with Non-Parties to the Policies in this Case*

The appellees suggest that Safeco's alleged silence in transactions with strangers to the O'Neill, Duston, Houck, and McCubbin policies somehow amounts to waiver of Safeco's right to enforce the anti-assignment clauses against these individuals. Our record contains no evidence that Safeco stood silent in the face of conduct that would suggest Safeco intended to waive its right to enforce the anti-assignment provisions in its contracts with O'Neill, Dutson, Houck, or McCubbin. In sum, the record contains no evidence of conduct "unequivocally inconsistent" with Safeco's claiming its rights under the anti-assignment provision of its respective contracts with the Four Individuals.[16] Waiver requires a positive act — something that shows unequivocally that the right-holder intended to forfeit

---

[16] *See Van Indep. Sch. Dist.,* 165 S.W.3d at 353 ("[w]hile waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right."); *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003) (waiver requires an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right).

the right.[17]   And, the right-holder's conduct must be so clear, so explicit, so unmistakable that it fairly substitutes for a written expression.[18]   We do not have that in this case.   The record evidence would not enable reasonable and fair-minded people to find waiver.[19]   Moreover, the waiver finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[20]

Though waiver generally presents questions of fact to be resolved by the trier of fact, in today's case the only proffered proof of waiver fails as a matter of law.   The only evidence grounded in conduct that arises from the parties' contractual relationships does not amount to waiver because it is not "unequivocally inconsistent" with claiming the right.[21]   The record lacks legally and factually sufficient evidence to support the trial court's finding that Safeco waived enforcement of the anti-assignment clauses in the Four Individuals' insurance policies.

**Unwelcome Consequences of Expanding the Waiver-by-Conduct Doctrine**

By looking to evidence of other people's contracts and contractual relationships with Safeco and citing to what happened some percentage of the time, the majority takes Texas waiver-by-conduct law beyond the borders of longstanding jurisprudence.   In the process, the majority opens the door to unwelcome consequences — at the courthouse and in the marketplace.

---

[17] *See Van Indep. Sch. Dist.,* 165 S.W.3d at 353; *Jernigan*, 111 S.W.3d at 156.

[18] *See Shields Ltd. P'ship*, 526 S.W.3d at 485–86; *Van Indep. Sch. Dist.,* 165 S.W.3d at 353; *Jernigan*, 111 S.W.3d at 156.

[19] *See City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex. 2005).

[20] *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).

[21] *See Shields Ltd. P'ship*, 526 S.W.3d at 485–86; *Van Indep. Sch. Dist.,* 165 S.W.3d at 353; *Jernigan*, 111 S.W.3d at 156.

In expanding the scope of waiver, the majority expands the scope of discovery in waiver cases. By creating a backdoor for otherwise irrelevant evidence of other contractual relationships, the majority effectively opens the discovery floodgates to a torrent of requests for irrelevant data that, under today's holding, arguably will be germane whenever a litigant raises a waiver-by-conduct defense. Indeed, instead of focusing on the conduct in the contractual relationship at issue, those resisting enforcement of contract provisions will seek to discover percentages, arguing that what happened in other contractual relationships informs the waiver-by-conduct analysis in the unrelated-contract dispute being litigated.

Texas law does not support looking to an insurer's conduct with other insureds to find waiver of the anti-assignment clause in its contracts with individuals who are strangers to those transactions. The majority cites no authority to support the notion that a party's conduct in one contractual relationship can provide evidence of waiver of a contractual provision with a different party, and this court should not enlarge waiver doctrine (or discovery in waiver cases) to so hold today. Today's holding brings uncertainty to the marketplace, frustrates reliance interests, and undermines freedom-of-contract principles. By diminishing the intent component of the waiver-by-conduct analysis, the court effectively finds contract rights forfeited without any evidence of the right-holder's intention to relinquish them. Given Texas's paramount public policy favoring freedom of contract, this court should not lightly find waiver of contract rights,[22] especially when doing so means expanding settled doctrine.

---

[22] *Shields Ltd. P'ship*, 526 S.W.3d at 481; *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013).

By applying the traditional rules of waiver, the court would protect the parties' reliance interests, honor their legitimate expectations, preserve freedom-of-contract principles, avoid discovery problems, and achieve greater certainty and predictability in the law and in the marketplace.

## Conclusion

The Supreme Court of Texas's demanding waiver-by-conduct standard protects legitimate contract rights and promotes freedom-of-contract principles. Today's holding does neither. The record contains nothing to suggest that Safeco ever did anything that would show an unequivocal intent to give up its rights to enforce the anti-assignment clause in its contracts with the Four Individuals. Because the evidence does not support the trial court's finding that Safeco waived enforcement of the anti-assignment clauses, this court should (1) sustain Safeco's legal-sufficiency and factual-sufficiency challenges and (2) address the trial court's alternative conclusion that the anti-assignment clauses apply only to "rights and duties under the policy" and so did not preclude the individual appellees from assigning claims arising from breach of the policy. Unless the anti-assignment clause fails on public-policy grounds (an issue the majority declines to address), the court should enforce the parties' insurance agreements as written.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise (Busby, J., majority).

15