**Affirmed and Opinion filed August 29, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-01010-CV

## SCHEAR HAMPTON DRYWALL, LLC, Appellant

## V.

## FOUNDERS COMMERCIAL, LTD, Appellee

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2015-22140**

## OPINION

This dispute involves the foreclosure of a mechanic's lien.[1] Schear Hampton Drywall, LLC sued to foreclose on its lien against Founders Commercial Ltd. and challenges in three issues the trial court's reduction of the amount of Schear Hampton's lien and failure to award attorney's fees to Schear Hampton. We affirm.

---

[1] *See* Tex. Prop. Code §§ 53.001–.287 ("Mechanic's, Contractor's, or Materialman's Lien").

## *Background*

Founders entered into a general contract with Construction Supervisors, Inc., for the construction of a senior living residential project in Houston, Texas known as "The Abbey." Construction Supervisors entered a subcontract with Target Masonry to complete brick and stucco work on The Abbey. Target Masonry subsequently walked off the job. Construction Supervisors then hired Schear Hampton to complete the stucco work. The subcontract between Construction Supervisors and Schear Hampton called for Schear Hampton to "[f]urnish and install [s]tucco in compliance with plans and specifications for a complete turnkey job" for the sum of $235,000. According to Schear Hampton, the contract price was increased by $155,967 pursuant to change orders approved by Construction Supervisors.

Midway into construction on The Abbey, Construction Supervisors notified Founders that it could not comply with the general contract because of financial problems. Founders agreed to pay the subcontractors directly and let Construction Supervisors manage the project.

Schear Hampton served Founders with a "Notice to Owner and Prime Contractor of Unpaid Claim for Materials and/or Labor Furnished." In the notice, Schear Hampton claimed that under its subcontract with Construction Supervisors, there was an unpaid balance of $152,173.60 for "materials and/or labor during the months of . . . October [and] September 2014." Schear Hampton described its services as "[s]tucco-labor and material." Schear Hampton later filed an "Amended Affidavit for Mechanic's and Materialman's Lien" in the amount of $152,173.60 and then filed this lawsuit against Founders and Construction Supervisors, seeking foreclosure of the lien.

Founders answered and asserted that Schear Hampton's lien claim should be

2

offset by "damages caused by Schear [Hampton's] breach of its subcontract with Construction Supervisors," "the cost to correct errors and omissions by Schear [Hampton] in the performance of its subcontract," and "the amount necessary to complete the work Schear [Hampton] agreed to perform in its subcontract." Founders filed a counterclaim for negligence and breach of contract in connection with Schear Hampton's performance under the subcontract. Founders also sought a declaration that Schear Hampton "has been paid the full amount to which it is entitled for its services rendered and materials supplied."

After a bench trial, the trial court rendered judgment that Schear Hampton's lien was partially valid "in the amount of $36,678.32" and that Founders was entitled to an offset for $15,000 in damages on its counterclaim. The trial court awarded Schear Hampton damages of $21,678.32 against Founders and awarded Founders that amount in a default judgment against Construction Supervisors.[2] The trial court declared that the lien is "null and void and of no force and effect . . . to the extent it exceeds the amount of $21,678.32." The trial court also ordered that if the judgment for Schear Hampton was not "paid when final," then Schear Hampton could "conduct a foreclosure sale in compliance with the provisions of the Texas Property Code, with respect to the real property identified" in the lien.

### *Discussion*

Schear Hampton challenges the judgment in three issues, contending (1) the trial court's reduction of the lien and offset for Founders' damages are not

---

[2] *See* Tex. Prop. Code § 53.153(b):

> If the suit results in judgment on the lien against the owner or the owner's property, the owner is entitled to deduct the amount of the judgment and costs from any amount due the original contractor. If the owner has settled with the original contractor in full, the owner is entitled to recover from the original contractor any amount paid for which the original contractor was originally liable.

supported by legally and factually sufficient evidence; (2) the trial court erred in denying Schear Hampton's request for attorney's fees; and (3) the trial court failed to order a foreclosure in compliance with the Property Code.

## I. Is the judgment supported by legally and factually sufficient evidence?

Schear Hampton in its second issue challenges the sufficiency of the evidence in support of the trial court's findings that Schear Hampton was owed less than the amount alleged in its lien and that the lien amount should be offset by the damages awarded to Founders.

We review the trial court's decision for legal and factual sufficiency of the evidence using the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A party attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must show

that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011); *Sloane v. Goldberg B'Nai B'Rith Towers*, No. 14-17-00557-CV, 2019 WL 2000484, at *9 (Tex. App.—Houston [14th Dist.] May 7, 2019, no pet. h.).

In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When a party attacks the factual sufficiency of an adverse finding on which it bore the burden of proof, it must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Burton v. Prince*, 577 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2019, no pet.). When a party challenges the factual sufficiency of the evidence supporting a finding on which it did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 919 (Tex. App.—Houston [14th Dist.] 2018, no pet.). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006); *2900 Smith*, 301 S.W.3d at 746.

We apply these standards mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the factfinder's findings. *See City of Keller*, 168 S.W.3d at 819, 822; *2900 Smith*, 301 S.W.3d at 745. When, as here, there is a complete reporter's record of the trial, the trial court's findings of fact will not be disturbed on appeal if there is any evidence of probative force to support them. *See Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Likewise, incorrect conclusions of law will not require reversal if the controlling facts support a correct legal theory. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## A. Evidence of Amount Owed to Schear Hampton

Schear Hampton challenges the trial court's finding that "[t]he balance owed to [Schear Hampton] for work on The Abbey performed by [Schear Hampton] is $36,678.32." Schear Hampton argues that it presented the following evidence: (1) it was owed $390,967 under the subcontract and change orders for completed work; (2) it was paid $238,793.40; and (3) it was owed a remaining balance of $152,173.60.

To prevail on its claim, Schear Hampton had to prove it performed the labor or furnished the materials and the debt is valid. *See Crawford Servs., Inc. v. Skillman Int'l. Firm, L.L.C.*, 444 S.W.3d 265, 268 (Tex. App.—Dallas 2014, pet. dism'd). Schear Hampton thus has the burden of proof on appeal to conclusively establish these elements or that the trial court's finding as to the amount owed is against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 241–42; *Burton*, 577 S.W.3d at 285.

Founders presented a pay application at trial that was preadmitted by agreement and reflected a balance due to Schear Hampton of $36,678.32. The pay

application was for the period ending April 20, 2015, and referenced the original contract amount of $235,000, "'Approved' Changes To The Contract" of $131,783.24, and "Previous Payments" of $330,104.92. After the previous payments were applied, the pay application reflects the "CURRENT PAYMENT DUE" of $36,678.32. The document is stamped "ENTERED 15 APR 2015."

Schear Hampton challenges the pay application on the following grounds: (1) it was dated after Schear Hampton filed its lien and "clearly created for the litigation by Founders"; (2) Founders made a judicial admission in its third party petition that Schear Hampton had an unpaid balance of $152,173.60 and did not complain that the lien claim was excessive or invalid; and (3) the pay application is not signed and was not authenticated. Founders counters that (1) there is no evidence the document was created for litigation; (2) Founders' pleading referencing the amount of Schear Hampton's lien claim is not a judicial admission; (3) none of the pay applications admitted at trial were signed; and (4) Shear Hampton did not object to the authenticity of the document.

As to Schear Hampton's first argument, the pay application was presented at trial through John Black, the president of Construction Supervisors. He testified that the pay application was dated April 20, 2015, after all the work was done on The Abbey project. According to him, the pay application was sent from Schear Hampton to Construction Supervisors, and it was initialed by an accountant from Construction Supervisors. According to Founders, the pay application was served in discovery by Construction Supervisors, and the Bates stamp on the document admitted at trial reflects that to be correct. Whether the pay application was created for litigation relates to the weight of the evidence, and we defer to the trial court, as the factfinder and sole judge of the credibility of the evidence, on this issue. *See City of Keller*, 168 S.W.3d at 819.

7

We agree with Founders that the recitation in Founders' petition of the amount of Schear Hampton's lien claim is of no moment and is not a judicial admission that Founders owed Schear Hampton the amount of its lien claim. Similarly, Schear Hampton has not established how the lack of a signature indicates the pay application is no evidence of the amount owed. At most, it raises a fact question about whether the payments referenced in the document were made.[3] We also must defer to the factfinder on this question.

Black testified that the pay application showed an amount due in April 2015 of $36,678. We agree with Founders that this is some evidence of the amount owed to Schear Hampton after completion of the work. Schear Hampton argues that the pay application reflects a payment of $92,000 that is not supported by evidence of "when, how, or by whom" that payment was made. However, the pay application itself is evidence of the balance owed to Schear Hampton and reflects payments totaling $330,104.92, leaving a balance of $36,678.32.

Schear Hampton also contends that no foundation was laid for the pay application or for Black's personal knowledge of the information in the pay application. But the pay application was preadmitted by agreement, and thus Schear Hampton failed to object to a lack of foundation or personal knowledge and has not preserved these complaints for our review. *See Ortega v. Cach, LLC*, 396 S.W.3d 622, 628 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Although a complaint regarding the legal or factual insufficiency of the evidence may be made for the first time on appeal, an objection to insufficient foundation is one of form rather than substance and must be preserved."); *cf. Washington DC Party Shuttle,*

---

[3] There is a sworn signature line to be signed by a Schear Hampton officer or owner on the pay application attesting, among other things, that "the work performed and the materials stored on the site represents the actual value under the terms of [the] Subcontract (including authorized Change Orders thereto)."

*LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("[A] litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts stated therein.").

Founders points to several inconsistencies in the evidence. First, as discussed, none of the pay applications were signed by anyone at Schear Hampton, and only one pay application reflects that it was approved by Construction Supervisors.[4] Second, several pay applications have conflicting information about the dollar amount of approved change orders as well as the total value of work completed. Much of the work described in the pay orders was performed before the time allowed for Schear Hampton's lien claim.[5] Third, some of the work purportedly should have been in the scope of work of the subcontract and not in a change order.[6] Finally, Schear Hampton admittedly did not complete all the

---

[4] Many of the pay applications have "Jim Smith – Partner" from Schear Hampton printed on them on the signature line, but they are not signed or notarized. A pay application from October 2014 appears to be electronically initialed by a Construction Supervisors accountant. The April 2015 pay application referenced above also has the same accountant's initials, so there are two pay applications that appear to have been approved by Construction Supervisors.

[5] Before filing suit, a lien claimant must give written notice of the unpaid balance to the original contractor "not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered." Tex. Prop. Code § 53.056(b). The same notice must be given to the owner "not later than the 15th day of the third month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered." *Id*. Schear Hampton gave its first notice to Founders on December 15, 2014 for work purportedly performed, as required under the statute, in September and October 2014. But the pay orders also cover work performed before September 1, 2014.

[6] The parties disputed at trial what was meant by the language "a complete turnkey job" in the subcontract. Schear Hampton presented evidence that it did not include repairing some of the stucco work done by Target Masonry, but Founders presented evidence that the stucco repair was in the scope of the subcontract and should not have been submitted as change orders. The trial court did not expressly hold the phrase "complete turnkey job" was ambiguous, but admitted parole evidence without objection regarding the scope of work in the subcontract. The trial court may conclude a contract is ambiguous and consider parole evidence when the issue is tried by

9

required punch list items to complete the work.

To support its claimed lien amount, Schear Hampton had to establish what work was performed after August 31, 2014 and the reasonable value of its work. *See Crawford Servs.*, 444 S.W.3d at 268. There were fact questions about when the work was done, what work was done, and what work was within the scope of the subcontract or should have been included in change orders. Because Founders presented evidence that the value of Schear Hampton's lien claim was only $36,678.32 and given the inconsistencies in the evidence presented by Schear Hampton, we conclude that Schear Hampton has not conclusively established the amount of its lien claim. Similarly, Schear Hampton has not established that the trial court's finding as to the amount owed is against the great weight and preponderance of the evidence.

## B. Offset for Founders' Claims

Schear Hampton also challenges the trial court's offset of the lien by damages awarded to Founders. Schear Hampton contends (1) Founders' breach of contract and negligence claims are legally barred; (2) there is no legal basis for reducing the lien by the amount of damages; and (3) alternatively, there is legally and factually insufficient evidence to support the amount of the damages finding.

**Breach of Contract**. According to Schear Hampton, Founders is not a third-party beneficiary of the subcontract and thus could not bring a breach of contract claim.[7] Schear Hampton asserts that because Founders is not a third-party

---

consent of the parties. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 21–22 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

[7] Schear Hampton also contends Founders' negligence claim is barred by the economic loss rule. Because we conclude below that Founders is a third-party beneficiary and there is sufficient evidence of a breach of contract, we need not address Schear Hampton's argument about the negligence claim. *See BMC Software Belgium*, 83 S.W.3d at 794 (noting reversal not required when "the trial court rendered the proper judgment").

beneficiary, it did not prove the existence of an agreement between Schear Hampton and Founders. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (listing elements of breach of contract including "the existence of a valid contract").

Founders counters that Schear Hampton waived this issue by failing to answer Founders' counterclaim on the basis that Founders was not a third-party beneficiary. We disagree. Schear Hampton did not have to answer the counterclaim because it was defending itself against an element of Founders' claim. *See Greater Fort Worth & Tarrant Cty. Cmty. Action Agency v. Mims*, 627 S.W.2d 149, 152 (Tex. 1982) ("If the plaintiff contesting the counterclaim does not intend to urge any defensive theory which must be verified or any affirmative defense under Rule 94, he is not required to answer the defendant's counterclaim.").

In the construction context, a property owner is ordinarily not a third-party beneficiary of a contract between the general contractor and a subcontractor absent clear evidence that the parties intended to benefit the property owner. *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 419–20 (Tex. App.—Austin 1995, no writ); *see also Rivera v. S. Green Ltd. P'ship*, 208 S.W.3d 12, 22 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("A party is presumed to contract only for its own benefit and any intent to benefit a third party must be clearly apparent and will not be presumed."). Any doubt over intent should be resolved against the property owner. *Rivera*, 208 S.W.3d at 22; *Raymond v. Rahme*, 78 S.W.3d 552, 561 (Tex. App.—Austin 2002, no pet.). For a property owner to recover as beneficiary of a subcontract, it must also show that the contracting parties entered into the contract directly and primarily for the property owner's benefit. *Rivera*, 208 S.W.3d at 22; *Raymond*, 78 S.W.3d at 561.

To determine whether Construction Supervisors and Schear Hampton

expressed a clear intent to directly benefit Founders, we must interpret the subcontract. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). The construction of an unambiguous contract is a question of law for the court, which we consider de novo. *Id*. If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When discerning the contracting parties' intent, we examine the entire agreement and give effect to each provision so that none is rendered meaningless. *Tawes*, 340 S.W.3d at 425.

Founders points to these provisions of the subcontract as evidence that Founders was a third-party beneficiary:

- The subcontract incorporated the general contract by reference—

  Contractor has entered into a contract . . . with Owner . . . for the erection, construction and completion of the Project in accordance with the plans, specifications, addenda, all applicable safety rules and regulations and any general, special and supplementary conditions of the Contract, *all of which are made part of said Contract and all of which are now made part of this Subcontract*.

  (Emphasis added.)

- Schear Hampton was obligated under the subcontract to

  o Provide stucco "labor and material" in compliance with the general contract and "subject to the entire satisfaction and approval" of Founders and others;

  o Be bound to the terms of the general contract and to assume "all of the obligations and responsibilities which [Construction Supervisors] . . . assumes toward [Founders]";

  o Indemnify Founders against expenses in connection with Schear Hampton's work; and

12

o "[C]omplete to [Founders'] satisfaction all punchlist work within thirty . . . days of Substantial Completion or" the time required by the general contract.

These provisions of the subcontract refer to Founders as the owner of the subject property. The above express language reveals that the parties to the subcontract intended to provide a direct benefit to Founders. *See Derr Const. Co. v. City of Houston*, 846 S.W.2d 854, 861 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding subcontract mentioning third party contained express language creating a third-party beneficiary); *see also Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 WL 2361432, at *4 (Tex. App.— Houston [14th Dist.] June 15, 2010, pet. denied) (mem. op.) ("The inclusion of [third party] in the release of claims clause clearly indicates the contracting parties' intent that [third party] receive a direct benefit from the settlement agreement.").

Schear Hampton argues, however, that an addendum to the subcontract "expressly prohibits any claim by a non-party to the" subcontract. The addendum states: "No 3rd party contingencies or contracts." Founders argues this clause is ambiguous and does not establish an intent to disclaim the language in the subcontract conferring a direct benefit to Founders. If the meaning of a contract is uncertain and doubtful, or reasonably susceptible to more than one meaning, the contract is ambiguous, and its meaning must be resolved by the factfinder. *Williams v. Williams*, 246 S.W.3d 207, 211 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Founders contends that a reasonable interpretation of the clause would be that Schear Hampton agreed not to employ third-party contractors or create third-party contingencies.[8] We agree that the meaning of the clause is uncertain, susceptible to two or more meanings, and thus ambiguous. So we must defer to the trial court as the factfinder to determine the parties' intent. *See id.*

---

[8] Founders does not offer an interpretation of "third-party contingencies."

Schear Hampton's owner testified at trial that he intended for the clause to exclude third-party beneficiaries from the subcontract. Even so, a representative from Construction Supervisors testified, "Honestly I don't know what it means." The trial court did not make an express finding about the meaning of the clause. But in finding that Schear Hampton breached the subcontract and in awarding Founders' damages, the trial court implicitly determined Founders to be a third-party beneficiary. We defer to the trial court's implied finding because it is supported by evidence that Founders was intended to be a third-party beneficiary of the subcontract. *See Hendricks v. Barker*, 523 S.W.3d 152, 160–61 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Under our standard of review, we must defer to the trial court's implied finding . . . because that finding is supported by the evidence.").

**Basis for Offsetting Damages**. Schear Hampton also argues the trial court could not offset the amount of the lien by the amount of Founders' damages. According to Schear Hampton, the Property Code does not expressly allow a deduction of a materialman's lien for damages. By the same token, the Property Code does not forbid such an offset.

Generally, once a construction project has been substantially completed, a party is entitled to damages for errors or defects in construction. *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 39 (Tex. 2012). This doctrine of substantial completion has been described as the legal equivalent of full compliance less any offsets for remediable defects. *Id*. The damages available for such defects are the cost of completing the job or of remedying the defects when they are remediable without impairing the building as a whole. *Id*.

As discussed, Founders established that it was a third-party beneficiary of the subcontract. It brought counterclaims against Schear Hampton based on faulty

workmanship and sought a lien offset by the cost to remedy those defects. Schear Hampton has cited no authority for the proposition that a third-party beneficiary is barred from seeking an offset for remediable defects under the substantial completion doctrine when a subcontractor files a materialman's lien claim under the Property Code. And we have found no such authority. We turn to the statute for guidance.

Under the rules of statutory construction, we must presume that every word of a statute was used for a purpose. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 260 (Tex. 2018). Likewise, we presume every word excluded from a statute was excluded for a purpose. *Id*. We ascertain the legislature's intent "from what it enacted." *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016); *Houston Cmty. Coll. Sys. v. HV BTW, LP*, No. 14-18-00467-CV, 2019 WL 2895219, at \*9 (Tex. App.—Houston [14th Dist.] July 2, 2019, no pet. h.).

The Property Code sets forth specific requirements involving a mechanic's lien, including, among other things, the persons entitled to the lien, the property subject to the lien, limitations on the lien, and the necessary procedures to perfect the lien. *See* Tex. Prop. Code §§ 53.021–.058. The legislature did not expressly preclude offsets to the amount of the lien for defects in construction under the common law substantial completion doctrine. If the legislature had intended to prevent a party from obtaining such an offset, the legislature could have said so in the statute. We decline to impose such a restriction. *See Wasson Interests*, 489 S.W.3d at 438 ("[T]his Court presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact."); *see also Houston Cmty. Coll. Sys.*, 2019 WL 2895219, at \*9 ("If the legislature had intended to eliminate

specific performance as an available remedy for service contracts, it could have done so."). In this connection, we conclude that Founders was entitled to an offset of the amount of Schear Hampton's lien by the number of remediable defects found by the trial court if such findings are supported by legally and factually sufficient evidence.

**Evidence of Damages**. Schear Hampton argues no evidence supports the trial court's award of $15,000 to Founders. Founders presented bids at trial reflecting costs to repair color variations in the stucco from $129,612.50 to $176,748. Founders also presented evidence that it had spent $6,000 to $7,000 to clean up stucco left on balconies and $32,000 to remove stucco applied over electrical boxes. The factfinder has broad discretion to award damages within the range of evidence presented at trial, which the trial court did here. *See Critical Path Res., Inc. v. Cuevas*, 561 S.W.3d 523, 561–62 (Tex. App.—Houston [14th Dist.] 2018, pet. filed).

Schear Hampton also asserts there is no evidence that it caused any of Founders' damages, pointing to evidence that it completed its scope of work and all punch list items. But conflicting evidence was presented at trial on these issues.

Founders' architect testified that the amenities building was never completed, was discolored, and there was "sloppy work on the bottom part of the stucco." Schear Hampton argued at trial that correcting the issues with the amenities building was not within the scope of work envisioned in the subcontract, but Founders presented evidence that Schear Hampton had to finish the work started by Target Masonry to Founders' satisfaction in accordance with the subcontract's requirement "for a complete turnkey job." Thus, Founders presented evidence that Schear Hampton breached the subcontract when it failed to correct these issues with the amenities building. Similarly, the architect testified that there

16

were inconsistent stucco colors on the residential section of The Abbey that are undisputedly included within the scope of the subcontract and, according to the architect, were never corrected by Schear Hampton.

A consultant hired by Founders, Dave Sherman, also testified that Schear Hampton did not match patched areas of stucco with the original stucco and there were other areas of discolored stucco not corrected by Schear Hampton.[9] Sherman also testified that Schear Hampton left "irregular lines between the stucco and adjacent brick wall," which was a deviation from general industry standards and "a workmanship issue." Construction Supervisor's owner testified to the contrary that Schear Hampton's performance was "up to industry standard."

Sherman also testified that Schear Hampton left stucco on "over a hundred" balconies that had to be cleaned up or topped with a concrete coating, although Sherman later admitted he did not know how the stucco got on the patios. A representative from Construction Supervisors testified that tile masons were mixing mortar on the balconies and Schear Hampton did not come back and clean up the debris because that was outside the scope of the subcontract.

Sherman further testified that Schear Hampton covered 30 to 35 electrical boxes with stucco. Schear Hampton presented evidence that it did not cover the electrical boxes. Electricians had to uncover the boxes, and the plaster had to be patched. Sherman finally testified that Schear Hampton did not finish the job, and some work had to be done to finish Schear Hampton's work after it left the job.

We defer to the factfinder's responsibility to fairly resolve conflicts in the evidence. Considering the conflicting evidence presented at trial, we conclude that

---

[9] Schear Hampton argues that the consultant admitted that damages associated with the amenities building were caused by Target Masonry. But, as discussed, Founders presented evidence at trial that Schear Hampton had to make those corrections as part of the subcontract.

Schear Hampton has not established a lack of evidence supporting the trial court's finding that Schear Hampton caused damages to Founders of at least $15,000, an amount far less than the amount sought by Founders, or that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Finally, Schear Hampton contends that Founders is not entitled to damages because the subcontract requires a change order for "back charges." Back charges in the construction context are generally deductions made by the general contractor to amounts due the subcontractor for costs incurred by the general contractor for faulty workmanship. *See, e.g., Viron Int'l Corp. v. CECO Envtl. Corp.*, No. W-13-CA-352, 2015 WL 11571002, at *3 (W.D. Tex. Feb. 27, 2015); *Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.*, No. 03-09-00385-CV, 2011 WL 350466, at *7 (Tex. App.—Austin Feb. 4, 2011, no pet.) (mem. op.). Whether the subcontract required change orders to authorize upfront payment deductions for costs incurred for faulty workmanship has no bearing on whether Founders could bring a claim for breach of contract for construction defects against Schear Hampton. We conclude this argument lacks support.

We overrule Schear Hampton's second issue challenging the legal and factual sufficiency of the evidence in support of the trial court's findings reducing the amount of Schear Hampton's lien and offsetting the amount of the lien by the amount of Founders' damages.

## II.    Did Schear Hampton establish its entitlement to attorney's fees?

In its third issue, Schear Hampton contends the trial court erred in failing to award attorney's fees to Schear Hampton because the lien statute states that the trial court "shall award costs and reasonable attorney's fees as are equitable and just." Tex. Prop. Code § 53.156.

Founders argues Schear Hampton waived this issue by failing to request additional or amended findings of fact and conclusions of law or to file a motion for new trial. The parties agreed to submit evidence about attorney's fees by affidavit, so the issue was before the trial court. Founders has cited no authority for the proposition that this submission of evidence was insufficient to preserve error on this issue, and we have found none.

Presuming without deciding that Schear Hampton preserved error, under the lien statute, the trial court did not have to award attorney's fees "[w]ith respect to a lien or claim arising out of a residential construction contract." *Id*. ("With respect to a lien or claim arising out of a residential construction contract, the court is not required to order the property owner to pay costs and attorney's fees under this section."). The Abbey is a senior living residential project. But even if this language does not apply to a residential construction *subcontract*, the statute states that a trial court "shall" award costs and fees in an action to foreclose a lien "as are equitable and just." *Id*.

Awarding fees in an equitable and just manner falls into the trial court's discretion. *See Acme Energy Servs., Inc. v. Staley*, 569 S.W.3d 841, 851 (Tex. App.—El Paso 2019, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Bocquet*, 972 S.W.2d at 21. Here, given that the trial court reduced the amount of Schear Hampton's lien and awarded damages to Founders, the court could have concluded it would not have been equitable or just to award attorney's fees to Schear Hampton. *See Acme Energy Servs.*, 569 S.W.3d at 851. We thus conclude the trial court did not abuse its discretion in refusing to award attorney's fees to Schear Hampton. We overrule Schear Hampton's third issue.

**III.    Did the trial court render a judgment of foreclosure and order a sale of the property in compliance with the statute?**

In its opening brief, Schear Hampton argues in its first issue that the trial court did not foreclose the lien in its judgment, without explanation about how the trial court failed to do so. Schear Hampton elaborates in its reply brief that the form of the judgment is wrong because "Schear Hampton would be allowed to foreclose on the property in the future (if Founders failed to pay Schear Hampton)."

Founders argues that Schear Hampton did not preserve error on this issue because it did not request "additional or amended findings of fact and conclusions of law" or bring "any such error to the court's attention by way of a motion for new trial." We agree.

To preserve a complaint for appellate review, a party must first present the issue to the trial court. Tex. R. App. P. 33.1(a). Motions for new trial and to modify judgment are appropriate methods for preserving error about an alleged defect in the form of the judgment. *Ortiz v. Collins*, 203 S.W.3d 414, 427 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The record does not reflect that Schear Hampton filed such a motion or otherwise brought this alleged error to the attention of the trial court. *See id*. Thus, it has waived this issue on appeal.

### *Conclusion*

We affirm the judgment of the trial court.


/s/    Frances Bourliot
      Justice


Panel consists of Justices Christopher, Bourliot, and Spain.